Judgment rendered October 1, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,452-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

KENNETH R. WILLIS, AS AGENT          Plaintiff-Appellant
FOR REBECCA JAMES WILLIS

versus

KAITLYN RENEE KILLIAN AND          Defendants-Appellees
OWEN KALEN KILLIAN AND
KELLY RENEE WILLIS KILLIAN

* * * * *

Appealed from the
Twenty-Sixth Judicial District Court for the
Parish of Bossier, Louisiana
Trial Court No. 171,815

Honorable Michael Nerren, Judge

* * * * *

MURPHY'S LAW, APLC                 Counsel for Appellant
By: Joel Keith Murphy

SHUEY SMITH, LLC                   Counsel for Appellees
By: Richard E. Hiller

* * * * *

Before PITMAN, THOMPSON, and ROBINSON, JJ.

**ROBINSON, J.**

Kenneth Willis ("Kenneth") appeals a judgment denying his claim for attorney fees related to his petition to collect the unpaid balance on a promissory note secured by a mortgage. The appellees have answered the appeal seeking damages for what they contend is a frivolous appeal. For the following reasons, we affirm the judgment and deny the relief requested in the answer.

## FACTS

Rebecca Willis ("Rebecca") is the mother of Kelly Killian ("Kelly") and Kenneth, and the grandmother of Kaitlyn Killian ("Kaitlyn"). Kaitlyn is Kelly's daughter. Kaitlyn borrowed $200,000 from her grandmother to buy a home in Bossier Parish.

Kaitlyn executed a promissory note in favor of Kenneth and Rebecca for $200,000. The note referred to an attorney fee of 15% for collection of the note. The note did not contain an acceleration clause or default provision. The note was secured by a mortgage on Kaitlyn's home that was executed by Kaitlyn in favor of Kenneth and Rebecca. The mortgage also referred to a 15% attorney fee in the event a suit was filed to collect on the note. The mortgage provided for acceleration of the balance due in the event that proof of fire and tornado insurance was not provided or that any payments on the note were not made timely.

Owen Killian ("Owen"), who is Kaitlyn's father, and his wife, Kelly, executed a guaranty agreement in favor of Kenneth and Rebecca. The guaranty agreement referred to the 15% attorney fee for collection of the

note.  The note, mortgage, and guaranty were prepared by an attorney hired by Owen.

On December 18, 2023, Kenneth, acting as agent for Rebecca, filed a petition for executory process on the promissory note and the mortgage. Kaitlyn, Kelly, and Owen (collectively, "the Killians")  were named as defendants.  The petition alleged that Kaitlyn had not complied with the mortgage terms and conditions because: (1) monthly payments in July and August of 2023 were not paid timely; (2) the October 2023 payment was returned for insufficient funds before being brought current; (3) the December 2023 payment was a day late; and (4) Kaitlyn failed to provide proof of fire and tornado insurance.  The petition further alleged that the unpaid principal balance owed was $191,043.47.

The petition stated that although Kaitlyn, Kelly, and Owen were named as defendants, it was an *in rem* proceeding against "said defendant," and that it was acknowledged that "there will be no further personal action taken against said defendant with regard to this indebtedness."  The petition does not expressly state which defendant is "said defendant," but presumably it is Kaitlyn, as the following paragraph refers to Owen and Kelly and their guaranty agreement.  The petition sought the issuance of a writ of seizure and sale, a 15% attorney fee, and costs.

The trial court issued a writ of seizure and sale.  On January 4, 2024, the Bossier Parish Sheriff's Office issued a notice of seizure ordering that

the property be seized and a sheriff's sale held on March 6.[1]  The sale was later reset for March 27.

On February 8, the Killians filed an answer and a motion for preliminary injunction to stay the sheriff's sale on the grounds that Kenneth had wrongfully obtained an order of seizure and a sheriff's sale date by not submitting authentic documents for the purpose of executory process.  The Killians maintained that enforcement of the debt was premature because the note lacked a default provision or an acceleration clause.  They also maintained that Kaitlyn had properly made every monthly installment payment, and that the payment allegedly returned for insufficient funds was subject to a stop payment order after Rebecca did not deposit it.  The hearing on the preliminary injunction was set for April 9 even though the sale was to occur in March.

On February 21, the Killians filed a motion for a stay of the sheriff's sale or, in the alternative, to reset the preliminary injunction hearing.   On March 4, the court reset the hearing on the motion for a preliminary injunction to March 21.

At the March 21 hearing, the court denied the request for an injunction when Kenneth agreed to file the original documents or certified copies into the record.  When Kaitlin told the court of her intent to sell the house, the court remarked that if she sold it, then the mortgage had to be paid off, and it "kind of solve[d] this whole deal."  The court stated that it

---

[1] Any further actions or proceedings in this matter at the trial court that are mentioned in the opinion occurred in 2024.

3

was not granting the preliminary injunction but was converting the matter to ordinary process and stopping the sheriff's sale.

On March 21, the court entered a judgment that the home was to be removed from the sheriff's sale docket. The judgment further stated that the matter was set for hearing on June 27 to address the issue of whether the payments due under the promissory note and mortgage could be accelerated and the entire remaining balance declared due and owing, and to address any other outstanding issues.

On April 3, a contract to purchase the house was signed, with the purchase price being $225,000. The sale was to close on or before May 31.

On April 3, the Killians' attorney wrote to opposing counsel requesting a payoff amount. He further wrote that attorney fees and court costs were not allowed because there was no acceleration or default provision in the note. Kenneth's attorney responded by letter on April 5 that $188,113.99 was currently owed, and the amount would be $187,773.47 if the April payment was made as scheduled. He further wrote that Kaitlyn would also owe an attorney fee of $28,166.02 as set forth in the promissory note and the mortgage.

On April 19, the Killians filed a motion for an expedited hearing to obtain a payoff statement. A hearing was set for June 27. During a telephone conference on April 30, the parties agreed to a payoff amount of $188,113.99 that was good through May 31.

The closing on the house occurred on May 17. The house was sold by a cash sale deed. The title company issued a check payable to Kenneth's counsel in the amount of $188,113.99.

4

On June 3, a cancellation of notice of seizure was filed by the Bossier Parish Sheriff.

On June 27, the Killians filed a memorandum on attorney fees and court costs. They asserted that since the house was sold and the mortgage was paid in full and canceled, they were willing to be responsible for the attorney fees and court costs incurred, but the claim for $28,166.02 in attorney fees and for all court costs was unearned and undeserved. However, they also claimed the *in rem* proceeding ended when the note was paid in full and the mortgage canceled; thus, Kenneth had no cause of action for attorney fees since he stated in the petition that he would take no further personal action against the "said defendant."

At the June 27 hearing, the parties agreed that the Killians would place $7,167.42 into escrow for costs related to the planned sheriff's sale. The court left the issue of attorney fees for future argument.

On July 11, the title company handling the sale of Kaitlyn's home filed a request for cancellation of the mortgage. Attached was the promissory note marked as paid in full.

On July 31, the Killians filed an exception of no cause of action and a memorandum in support of their own claim for attorney fees for filing the motion to obtain a payoff statement. They argued that Kenneth should be sanctioned for attempting to claim attorney fees of $28,166.0 and court costs. They asserted that Kenneth was not entitled to attorney fees for two reasons. First, Kenneth alleged in the petition that it was an *in rem* proceeding and that he would take no further personal action against defendant. Since the only remaining issues concerned attorney fees and

court costs, this meant that Kenneth was now pursuing a personal action. Second, the *in rem* proceeding was completed once the property was sold, the note was paid in full, and the mortgage was canceled.

At the August 1 hearing, the court heard stipulated testimony and accepted various exhibits into evidence, including an exhibit showing total costs to the sheriff of $6,370.42, and an affidavit from the Killians' attorney setting forth their legal fees and expenses of $10,851.20.

Kenneth's attorney argued that the court converted the matter from executory process to ordinary process at the March 27 hearing and made it a personal matter when it stopped the sheriff's sale. The court stated it never converted the matter from executory process to any type of action, and the actual sale canceled the executory process. The Killians' attorney argued that the $28,166.02 attorney fee was unreasonable. He additionally argued that based on the grounds asserted in the exception of no cause of action, Kenneth cannot recover attorney fees. Kenneth's attorney agreed with the court that he was $4,800 short of being made whole. Asked what would have happened if the house had been sold at the sheriff's sale, Kenneth's attorney answered that he would have had to file another lawsuit for the deficiency. It was noted by the court that based upon untimely payments, there was enough basis for Kenneth to bring the suit. The court took the matter under advisement.

On August 27, Kenneth, acting as agent for Rebecca, filed a petition under the same docket number seeking $28,217.10 in attorney fees from the Killians.

At a September 12 hearing, the court concluded that it would not award attorney fees because it did not think attorney fees were appropriate since the matter was an *in rem* proceeding with no personal liability. The court rendered judgment ordering the Killians to pay $4,870.42 as an equalizing payment to reimburse Kenneth for the payment of costs owed to the Bossier Parish Sheriff. Kenneth's claim for attorney fees and additional court costs was denied.

Kenneth has appealed the judgment seeking reversal of the denial of attorney fees. The Killians have answered the appeal,

**DISCUSSION**

Kenneth argues on appeal that the trial court was clearly wrong in not awarding attorney fees. Regarding the standard of review, he states that a trial court's ruling on a claim for attorney fees is reviewed for abuse of discretion, and factual findings are reviewed pursuant to the manifest error/clearly wrong standard.

We note that the third circuit has stated that the applicable standard of review for a trial court's grant or denial of attorney fees is abuse of discretion. *Lejeune v. Fontenot*, 22-444 (La. App. 3 Cir. 1/4/23), 362 So. 3d 911, *writ denied*, 23-00452 (La. 5/16/23), 360 So. 3d 839. In reaching that conclusion, the third circuit relied on *Covington v. McNeese State University*, 12-2182, p. 6 (La. 5/7/13), 118 So. 3d 343, 348, where the supreme court stated: "The appellate court reviews an award of attorney's fees for an abuse of discretion. The district court's factual determinations will not be set aside absent manifest error." (Citations omitted.)

In *Covington*, the supreme court first addressed the argument that the lower courts should have rejected the plaintiff's fee application in its entirety. The supreme court found no error in the appellate court's rejection of that argument. The supreme court also found no clear error in the trial court's finding that there was sufficient documentation of the time spent by counsel on the case. The supreme court then addressed the trial court's determination of the fee amount by using an abuse of discretion standard of review.

We note that the supreme court has stated that the ruling of a trial judge on the issue of damages under La. C.C.P. art. 3608, which includes attorney fees, should not be disturbed on appeal absent a clear abuse of discretion. *Arco Oil & Gas Co., a Div. of Atlantic Richfield Co. v. DeShazer*, 98-1487 (La. 1/20/99), 728 So. 2d 841. Art. 3608 concerns the wrongful issuance of a temporary restraining order or a preliminary injunction.

We further note that in workers' compensation matters, the decision by the WCJ to grant or deny penalties and attorney fees under La. R.S. 23:1201 is subject to a manifest error standard of review. *Thomas v. Browning-Ferris Inc.*, 04-1584 (La. 2/25/05), 894 So. 2d 1091; *Buggs v. Town of Bernice*, 54,804 (La. App. 2 Cir. 11/16/22), 351 So. 3d 920, *writ denied*, 22-01825 (La. 2/14/23), 355 So. 3d 613.

Kenneth's claim for attorney fees does not arise from statute, but from the terms of the note. We conclude that the decision regarding whether Kenneth was entitled to any attorney fees was a factual determination by the trial court subject to the manifest error/clearly wrong standard of review.

8

Kenneth maintains that an award of attorney fees was appropriate when Kaitlyn agreed to pay attorney fees if suit was filed to collect on the note. While it is correct that an award of attorney fees was possible, Kenneth was not entitled to any attorney fee under the circumstances of this matter. The trial court was not manifestly erroneous or clearly wrong in rejecting his claim for attorney fees.

Kenneth contends that the matter was no longer an *in rem* action when the trial court considered his claim for attorney fees. He argues that his suit had been converted from one of executory process to one of ordinary process when the house was removed from the sheriff's sale.

"Executory proceedings are those which are used to effect the seizure and sale of property, without previous citation and judgment, to enforce a mortgage or privilege thereon evidenced by an authentic act importing a confession of judgment, and in other cases allowed by law." La. C.C.P. art. 2631.

An executory proceeding in Louisiana is an *in rem* action derived from the civil law; it provides a simple, expeditious, and inexpensive procedure by which creditors may seize and sell property upon which they enjoy a mortgage or privilege. *Walter Mortgage Company, LLC v. Turner*, 51,007 (La. App. 2 Cir. 11/16/16), 210 So. 3d 425.

A personal action is one brought to enforce an obligation against the obligor, personally and independently of the property which he may own, claim, or possess. La. C.C.P. art. 422. A real action is one brought to enforce rights in, to, or upon immovable property. *Id.*

9

The terms "real" or "personal" under Louisiana law correspond roughly to the common-law concepts of "rights in rem" and "rights in personam." *Chateau Lafayette Apartments, Inc., v. Meadow Brook National Bank*, 416 F. 2d 301 (5th Cir. 1969), footnote 7.

While Kenneth is correct that his action was converted from executory process to ordinary process once the house was removed from the sheriff's sale, it remained an *in rem* proceeding. We recognize that in his petition, Kenneth pled that his lawsuit was an *in rem* proceeding against "said defendant," and that it was acknowledged that "there will be no further personal action taken against said defendant with regard to this indebtedness." We further recognize that after the August 1 hearing but before the trial court rendered a ruling, Kenneth, acting as agent for Rebecca, filed a petition under the same docket number seeking $28,217.10 in attorney fees from the Killians.

Kenneth counters that even if it was still an *in rem* proceeding, Kaitlyn had enough proceeds from the sale of the house to pay the attorney fee without being personally liable. This argument is also without merit. Although Kenneth clearly reserved his claim to argue for attorney fees, he released the mortgage and allowed the promissory note to be marked as paid in full without having the disputed funds for attorney fees placed in escrow.

Finally, Kenneth is without relief because of the mere fact that the promissory note did not have an acceleration or default provision. This meant that Kenneth could not sue to collect for the unpaid balance of the note. He would have been able to sue only for any unpaid installments, which were none. Thus, he would have been entitled to 15% of zero.

We note that in *Titus v. Titus*, 23-0349 (La. App. 4 Cir. 11/29/23), 382 So. 3d 999, *writ denied*, 24-00046 (La. 3/5/24), 380 So. 3d 551, a former wife sued her former husband after he allegedly defaulted on two promissory notes by failing to make payments. The notes related to child support arrearages and community property. The trial court granted the former wife's motion for summary judgment and awarded the entire principal sum. In opposition to his former wife's motion for summary judgment, the former husband argued that the notes lacked any acceleration clause giving his former wife the authority to demand payment on the balance owed for his failure to make the installment payments. He claimed that she could invoke payment on demand only if he violated an obligation to provide security. The fourth circuit was not receptive to the former husband's argument:

> Mr. Titus cites no law that specifically mandates that the inclusion of an acceleration clause is a mandatory requirement for the collection of a promissory note. Rather, our jurisprudence is well-established that the plaintiff's burden of proof to collect on a promissory note is straightforward – "the [plaintiff's] production of the note sued upon makes his case." *Merchants Trust & Sav. Bank v. Don's Int'l*, 538 So. 2d 1060, 1061 (La. App. 4th Cir. 1989). Here, Mr. Titus does not contest the validity of the Notes or that he failed to make the installment payments as delineated in the Notes. Moreover, Mr. Titus points to no clause within the Notes that affirmatively prohibits Ms. Titus from making demand on the Notes based on a failure to pay. Thus, the existence or non-existence of an acceleration clause is not a genuine issue of material fact that is germane to the enforcement of the Notes, and thereby, the status of any acceleration clause is insufficient to defeat summary judgment.

*Id.*, 23-0349 at pp. 12-13, 382 So. 3d at 1008.

11

We disagree that the absence of an acceleration clause does not preclude a lawsuit to collect the balance of the note. We recognize that La. C.C. art. 2054[2] provides:

> When the parties made no provision for a particular situation, it must be assumed that they intended to bind themselves not only to the express provisions of the contract, but also to whatever the law, equity, or usage regards as implied in a contract of that kind or necessary for the contract to achieve its purpose.

While it is unquestioned that an attorney paid by Kaitlyn's father prepared the promissory note, mortgage, and guaranty, nothing in the record explains why an acceleration clause appears in the mortgage but not in the promissory note. It is not clear if this was an oversight or intentional. It was stipulated that the attorney explained the documents to the parties, and there were no questions or requests for additions or changes. Regardless, an acceleration clause is absent from the note. Because Kenneth could not accelerate the payment of the note, he was only entitled to 15% of what was due at the moment, which was zero, because Kaitlyn was current with her payments.

The Killians have answered the appeal seeking damages for what they contend is a frivolous appeal. The court may award damages, including attorney fees, for a frivolous appeal. La. C.C.P. art. 2164. Regarding the award of damages for frivolous appeals under art. 2164, this court stated in *Cox v. O'Brien*, 49,278, p. 12 (La. App. 2 Cir. 8/13/14), 147 So. 3d 809, 817:

> This provision is penal in nature and is to be strictly construed. Appeals are always favored and, unless the appeal is unquestionably frivolous, damages will not be allowed. Damages for frivolous appeal are only allowed when it is

---

[2] La. C.C. art. 2054 was not cited in *Titus, supra*.

12

> obvious that the appeal was taken solely for delay, that the appeal fails to raise a serious legal question or that counsel is not sincere in the view of the law he advocates, even though the court is of the opinion that such view is not meritorious.

(Case citations omitted.)

No ground to establish a frivolous appeal is present in this matter. The appeal was not taken solely for delay, it did not fail to raise a serious legal question, and there is no evidence that Kenneth's counsel is insincere in the view of the law that he advocated in this unique case. Accordingly, the request for damages raised in the answer to the appeal is without merit.

## CONCLUSION

For the foregoing reasons, the trial court was not clearly wrong in denying the request for attorney fees. The judgment is affirmed and the relief sought in the answer is denied. Each party is to bear their own appeal costs.